IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOHANNA WHITE, § | |
| § | |
| v.  § | NO.  A-05-CA-945 AWA |
| § | |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are: Plaintiff's Brief (Clerk's Doc. No. 8); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 9); and the Social Security Record filed in this case (Cited as "Tr.").

## I.  PROCEDURAL HISTORY

Plaintiff Johanna White ("Plaintiff") applied for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB") on October 31, 2002, alleging inability to work due to diabetes mellitus, a hearing impairment, injury to her left arm and shoulder, fatigue, weight loss, and anxiety.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 7, 2004.  The ALJ denied Plaintiff benefits in a decision issued May 19, 2005.  Plaintiff appealed this decision to the Appeals Council and submitted additional evidence for review.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 26, 2005.  On November 10, 2005, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff disability benefits.

## II.  ISSUES PRESENTED

Plaintiff contends that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act is not supported by substantial evidence and is not based upon the proper legal standards.  Specifically, Plaintiff raises the following issues: {1) whether the ALJ erred in disregarding Plaintiff's treating doctor's determination of Plaintiff's limitations; and (2)  whether the evidence supports the residual functional capacity determined by the ALJ.

## III.  STATEMENT OF THE CASE

Plaintiff contends that she has been unable to engage in substantial work activity since October 8, 2002,  due to diabetes mellitus, a hearing impairment, injury to her left arm and shoulder, fatigue, weight loss, and anxiety. Plaintiff was represented at the hearing by an attorney.  A medical expert and a vocational expert testified at the hearing.

### A.  Plaintiff's Testimony

Plaintiff testified that she was born on July 1, 1965, and was 39 years old at the time of the hearing.  Tr. 29.  Plaintiff stated she has never been married and has no children, and that she lives alone in an apartment.  Tr. 29.   Plaintiff graduated from high school in 1983.  *Id.*

Plaintiff testified that she was last employed as a technician at the Texas Commission for the Deaf for ten months ending in October of 2002.  Tr. 32. Plaintiff explained that as a technician, she performed computer data entry, filed  and acted as a backup receptionist answering both the regular and TYY phone for the deaf and hard of hearing. Tr. 33. Plaintiff testified that she was terminated for absences and tardiness. Tr. 33. Plaintiff testified that she was absent and tardy because "it was hard for me to get up in the morning to get to work on time." Tr. 34.

Plaintiff testified that she had been attending Austin Community College since August 11, 2003, seeking a degree in social work. Tr. 39. She also testified that she had completed 36 credit hours in about two years and has a 3.4 GPA on a 4.0 scale. Tr. 43. Plaintiff explained that she did not use a sign language interpreter in her college classes but relied on her hearing aids and lip reading to understand her teachers. Tr. 44.

Plaintiff testified that she could control her diabetes, as she had when she stayed with her parents in Australia from January 2003 to July 2003 and ate healthy foods, but having to worry about money, working and "life in general" made it harder to control her diabetes. Tr. 47.

Plaintiff stated that her hearing problems began at age 23 and are hereditary. Tr. 42. Upon examination by her attorney, Plaintiff stated that her shoulder pain is extant about three to four hours a day, that she had tried various treatments, and that none had worked. Tr. 53. She stated she drives a car with a standard transmission. Tr. 54.

Upon examination by the ALJ, Plaintiff testified that she can speak clearly on a telephone, but cannot always understand what the other party is saying. Tr. 55. Plaintiff testified that she can sit for 3 to 4 hours with no fatigue, can walk one or two blocks before having to stop, and can lift between 5 and 10 pounds. Tr. 56.

**B.   Medical Expert's Testimony**

Dr. Barbara Felkins, M.D., testified as a medical expert. Tr. 35. Dr. Felkins testified that Plaintiff is deaf, but with hearing aids can hear conversational level speech, but may miss sounds or misunderstand speech in a noisy environment. Dr. Felkins testified that this level of hearing impairment with hearing aids did not meet or equal the listing for hearing impairment. Dr. Felkins testified that Plaintiff also suffers from diabetes which she developed in 1998. Tr. 36. Plaintiff is

insulin dependent and suffers from fatigue. *Id.*  Dr. Felkins testified that the medical evidence does not show that Plaintiff has experienced organ damage or a disabling inability to control her insulin. Tr. 38.  Dr. Felkins further stated that Plaintiff could not lift objects overhead until her capsulitis resolved and even after resolution she could engage in no repetitive overhead lifting.  Dr. Felkins found that Plaintiff can only perform a job where she can regularly check her blood sugar, but that Plaintiff does not meet the listed criteria for disabling diabetes.  Tr. 38-39. Lastly, Dr. Felkins testified that Plaintiff was being treated for depression with Paxil, but that there was no follow up, so the depression is not disabling.  Tr. 39.

Upon examination by Plaintiff's attorney, Dr. Felkins testified that she could not testify how Plaintiff's tinnitus, or ringing in her ears, would impact on her hearing and concentration.  Tr. 49. Dr. Felkins explained that Plaintiff's adhesive capsulitis, or shoulder pain and stiffness, usually improves within one year, although it could take longer.  Tr. 49.

**C.     Vocational Expert's Testimony**

Donna Eagar testified as a vocational expert. Tr. 59.  She testified that Plaintiff's past work as an "administrative clerk" qualifies as semi-skilled light work or SVT4. Tr. 59.  Ms. Eagar testified that Plaintiff would be unable to perform her past work, but would be able to perform other light sedentary jobs such as data examination clerk, data entry clerk, clerk typist, final assembler of optical goods, hand mounter in a photo finishing shop, and surveillance system monitor.  The Vocational expert testified that these jobs exist in substantial amounts in the state and national economy.  She also testified that in determining that Plaintiff could perform these jobs, she took into account Plaintiff's need for minimal contact with the public and coworkers because of her hearing impairment. Tr. 64-69.

**D.      Medical Records**

The following is a summary of Plaintiff's medical records which are relevant to the issues presented in the instant case. Plaintiff's medical records reflect that she is an insulin-dependent Type 1 diabetic. Tr. 222. The records further reflect that she is at risk of developing insulin induced hypoglycemia or low blood sugar which could cause her to pass out. *Id.* The record further reflects that Plaintiff's diabetes is "chronically uncontrolled" and that she has not treated herself with regular insulin therapy, but that her condition is controllable with insulin therapy. Tr. 224-233. She was first diagnosed with diabetes at the age of 32 in July of 1998. Tr. 232.

The medical records also reflect that Plaintiff suffers from hereditary hearing loss. Tr. 242-243. She was certified as functionally deaf on May 2, 2000. Tr. 247. The records further reflect that her hearing loss is helped considerably by hearing aids. Tr. 352. The record states "without hearing aids will not hear conversational level speech. With both aids will hear conversational level speech, may miss soft sounds and may misunderstand speech in a noisy environment." Tr. 394. Plaintiff's aided hearing level is 84% correct as of October 6, 2004. Tr. 399.

On August 22, 2002, Plaintiff injured her shoulder while moving a box. Tr. 259. She was diagnosed with adhesive capsulitus. Tr. 258. She was put on a physical therapy regime and overhead lifting was restricted. Tr. 255. On September 17, 2002, Dr. Charles Hinman reported that Plaintiff's cervical active range of motion, shoulder active range of motion, and shoulder manual muscle tests were within normal limits with the exception of some slight pain. Tr. 252. Dr. Hinman stated that "[o]verall, Patient has improved shoulder ROM, but still relatively irritable. She tolerated exercises with minimal complaints of pain. She exhibits slight adverse neural tension, but also has

positive impingement tests." *Id.* On September 19, 2002, Dr. Hinman reported "she feels the pattern of symptoms is improving. Plaintiff has been working within the duty restrictions. . . .Patient has had physical therapy and feels better. . . .modified activity – no reaching above shoulders. " Tr. 250. On March 4, 2003, Dr. Robert Creer, an orthopaedic surgeon assessed that:

> Clinically she has adhesive capsulitus of the shoulder. The rotator cuff appears to be intact and I could not detect any obvious impingement. I have explained to her the natural history of an adhesive capsulitis, emphasizing that it should improve with time but it may take up to 2-3 years to do so. . . .I have made no plans to review her unless required.

Tr. 283. Dr. Tom Cross, a doctor consulted by Plaintiff in Australia opined that Plaintiff suffers from left shoulder adhesive capsulitis. He opined that Plaintiff should not engage in any range of motion that might cause her pain and that she is unable to return to her position as an administrative assistant. He stated that this condition usually takes from 9 months to 2-3 years to resolve. Tr. 296-297.

## IV.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

After review of the medical evidence, consideration of Plaintiff's testimony, the medical expert's testimony, the vocational expert's testimony as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ found that Plaintiff had severe impairments of diabetes mellitus, a hearing impairment, injury to her left arm and shoulder, fatigue, weight loss, and anxiety, but that such impairments did not meet the Listing of Impairments. Tr. 16.

The ALJ found that Plaintiff's allegations regarding her limitations were not credible. Tr. 20. Noting that her hearing impairment was largely corrected with hearing aids, and that her diabetes could be controlled with insulin, the ALJ found that there was minimal evidence to sustain that

Plaintiff's impairments are debilitating. Particularly, the ALJ noted that Plaintiff's daily activities are indicative of her abilities to perform substantial gainful employment. Tr. 18.

The ALJ determined that although Plaintiff is not disabled, but due to her hearing limitations, she is restricted to work with only minimal contact with the public and minimal contact with coworkers. Tr. 18. He also found that Plaintiff is able to perform sedentary exertional activity lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. The ALJ found that Plaintiff could occasionally walk and stand, climb ramps and stairs, stoop and crouch. *Id.*

The ALJ found that Plaintiff could not perform her past work, but relying on the testimony of the vocational expert, that she could perform other jobs existing in significant numbers in the national economy.

## V. STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability;

and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

## VI. ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520 (1999). First, the claimant must not be presently working at any substantial gainful activity.[1] Second, the claimant must have an impairment of combination of impairments that is severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to her past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering

---

[1] Substantial gainful activity is work activity that is both substantial and gainful. Substantial work activity is work activity that involves doing significant physical or mental activities. Gainful work activity is work activity that an individual performs for pay or profit. 20 C.F.R. 416.972.

the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520.

At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant acquits her responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment that claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets this burden, the claimant must then prove she in fact cannot perform the alternate work. *Id.*

**A.      Did the ALJ Properly Assess Plaintiff's Residual Functional Capacity, Including Proper Consideration of Her Physician's Identification of her Limitations?[2]**

Plaintiff argues that the ALJ did not properly consider her limitations when he found she was capable of performing less than a full range of sedentary work. In particular, Plaintiff argues that this conclusion is inconsistent with the finding of her treating physician, Dr. Pandenton. Plaintiff's Brief at p. 2. Defendant asserts the ALJ's conclusion was supported by substantial evidence.

The Court finds that the ALJ's determination that Plaintiff was restricted to less than a full range of sedentary work is supported by substantial evidence in the record. As identified by the Commissioner, the ALJ's residual functional capacity determination is supported by medical records from Dr. Winegar, treatment records, the medical expert testimony, and the findings of the state agency medical consultants. Tr. 399, 35-39, 295, 298-308, 310, 318-328. Additionally, the ALJ's residual functional capacity determination is consistent with the post-hearing form submitted by Dr. Balakumar Pandeton, whom Plaintiff has identified as her treating physician.

---

[2]Residual functional capacity is the maximum work a plaintiff can peform despite her limitations. 20 C.F.R. § 404.1545.

9

Dr. Pandeton filled out a document entitled "diabetes mellitus residual functional capacity questionnaire." Tr. 406-409. On that questionnaire, Dr. Pandeton stated that he had seen Plaintiff twice – once in October of 2003 and once in November of 2004. Tr. 406. He stated that her prognosis for her diabetes is "good" her hearing "stable" and shoulder pain "unknown." Dr. Pandeton identified Plaintiff's symptoms as: excessive thirst, general malaise, frequency of urination, headaches, and hypoglycemic attacks. Tr. 406. Dr. Pandeton noted "I have only seen Ms. White two times in the past year for diabetes care. And I am not a disability examiner. Please interpret this form based upon that." Dr. Pandeton responded to much of the form's questions regarding Plaintiff's impairments as "unable to answer." However, with the questions Dr. Pandeton did answer, he opined that Plaintiff does not need to integrate periods of walking around into an 8-hour workday, does not need a job that permits shifting positions, and would not need to take unscheduled breaks during an 8-hour day. Tr. 408. Dr. Pandeton further opined that Plaintiff could rarely lift less than 8 pounds and found she should avoid concentrated exposure to all the environmental factors listed on the form. Tr. 409.

Plaintiff's primary contention is that the ALJ did not incorporate all the limitations incorporated by Dr. Pandeton in determining Plaintiff's residual functional capacity. However, the record shows that the ALJ expressly considered Dr. Pandeton's form in his May 19, 2005, decision. Specifically, the ALJ considered various symptoms listed by Dr. Pandeton, Plaintiff's prognosis, and various limitations noted by Dr. Pandeton related to environmental exposure. Tr. 17. Plaintiff complains that "the ALJ's limitations excluded some of the limitations the treating doctor had found to be significant such as frequency of urination, fatigue, and hyoglycemic attacks three times a week." Plaintiff's Brief at p. 5. As noted by the Commissioner, not only did Dr. Pandeton skip the

many questions relating to Plaintiff's functional capacity, but also these alleged "limitations" are identified on the form as symptoms of Plaintiff's diabetes. Lastly, Dr. Pandeton opined that Plaintiff does not need to integrate periods of walking around into an 8-hour workday, does not need a job that permits shifting positions, and would not need to take unscheduled breaks during an 8-hour day, effectively opining that these symptoms would not limit Plaintiff's ability to work. Thus the ALJ's determination that Plaintiff was restricted to less than a full range of sedentary work is consistent with Dr. Pandeton's conclusions and that substantial evidence supports the ALJ's findings.

The ALJ has the discretion to determine the credibility of the various medical reports in the record. *Greigo v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). Additionally, the Fifth Circuit has held that where good cause is shown, a treating physician's opinion can be given limited or no weight if the opinion is not supported by the evidence. *See Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)). In this case Dr. Pandeton had only seen Plaintiff twice. Tr. 406-408. He opined that Plaintiff suffered from various symptoms, but did not identify any work limitations caused by these symptoms, nor did he consider them debilitating. The evidence shows that Plaintiff was able to drive, socialize, and carry a full college class load at a local community college. Good cause exists to exclude a treating physician's opinion when statements are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Id.* (quoting *Greenspan*, 38 F.3d at 237). The Court finds that the ALJ's determination regarding Plaintiff's residual functional capacity not only is based on substantial evidence; but also was not in error because he fully considered Dr. Pandeton's determinations regarding Plaintiff's limitations in assessing Plaintiff's residual functional capacity.

**B.     Did the ALJ Err in Determining that Plaintiff Could Perform a Significant Number of Jobs in the Economy?**

Plaintiff further argues that the jobs identified by the ALJ do not fit Plaintiff's residual functional capacity as identified by the ALJ or her treating physician. The record shows that the ALJ used a vocational expert to identify jobs Plaintiff could perform despite her limitations. The vocational expert testified that Plaintiff would be unable to perform her past work, but would be able to perform other light sedentary jobs such as data examination clerk, data entry clerk, clerk typist, final assembler of optical goods, hand mounter in a photo finishing shop, and surveillance system monitor. The vocational expert testified that these jobs exist in substantial amounts in the state and national economy. She also testified that in determining that Plaintiff could perform these jobs, she took into account Plaintiff's need for minimal contact with the public and coworkers because of her hearing impairment. Tr. 64-69.

The record shows that the ALJ incorporated all the functional limitations recognized by the ALJ in the hypothetical he gave to the vocational expert. Specifically, the ALJ described a light range of sedentary work, with reduced lifting requirements, no exposure to cold or environmental hazards, wearing hearing aids but still missing soft sounds and mishearing conversational speech in a noisy environment with minimum public and co-worker contact. Tr. 60-66. The vocational expert identified various jobs that fit these requirements. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Plaintiff now disputes that these jobs in fact fit her residual functional capacity. First, she argues that the job of data exam clerk does not fit her residual functional capacity because it requires her to "refer work to other workers for correction." Plaintiff claims that this qualifies as more than minimum contact with co-workers. Second, Plaintiff claims that with her limitations she does not

meet the qualifications of a clerk-typist because that job may involve answering the telephone. Third, Plaintiff claims that with her limitations, she does not meet the qualifications of a surveillance system monitor as it requires use of the telephone. Plaintiff also asserts that other jobs identified by the vocational expert are of medium and not light exertional levels.

The Court finds no conflict in the ALJ's description of Plaintiff's residual functional capacity, the vocational expert's testimony and the descriptions of jobs identified from the *Dictionary of Occupational Titles*. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. Rev. 1991). The vocational expert specified the occupational codes from the *Dictionary*, and the listings of these codes are all sedentary and unskilled or semi-skilled, which was identified by the ALJ as Plaintiff's proper functional level. Tr. 63-66.

As a general rule, expert vocational testimony constitutes substantial evidence in support of an ALJ's ultimate determination when the hypothetical question which elicited it incorporates all disabilities that the ALJ has found, the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony. *Morris v. Bowen,* 864 F.2d 333 (5th Cir.1988). Moreover, reliance on a hypothetical question is permissible where the question "reasonably incorporated" the claimant's characteristics and the claimant "had an opportunity to correct any defect in the hypothetical." *Id.* Since the claimant in this case was represented by counsel and was afforded the opportunity to correct deficiencies in the ALJ's question, the jobs identified by the vocational expert and relied upon by the ALJ, are substantial evidence of Plaintiff's ability to work. *See Johnson v. Barnhart*, 285 F.Supp.2d 899, 915 (S.D. Tex. 2003) (citing *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir.2001)).

The Fifth Circuit has observed that in determining a claimant's ability to work, a vocational expert ". . . is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). Unlike the *Dictionary of Occupational Titles*, which simply gives a general description of the job duties involved, a vocational expert is able to compare the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion as to whether the claimant can perform the specific job. *Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986). Because the hypothetical question articulated by the ALJ reasonably incorporated Plaintiff's impairments,[3] the ALJ properly evaluated and accepted the vocational expert's testimony. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir.1994). As such, there is sufficient evidence to support the ALJ's finding that Plaintiff is not disabled.

Lastly, to the extent Plaintiff contends that there are unresolved conflicts between the vocational expert's and the DOT's classifications of the various jobs which the vocational expert testified that Plaintiff can perform, this contention is without merit. Even if the ALJ erred by failing to discover and address such conflicts, Plaintiff is not entitled to relief unless she can establish that she has been prejudiced by the alleged error. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988) (holding that the judgment should not be vacated unless the substantial rights of a party are affected). In this case, Plaintiff has not identified any alleged conflict between the jobs of data entry clerk and

---

[3]With regard to Plaintiff's arguments about particular jobs, the data exam clerk's requirement that she may sometimes refers work to others for correction does not require that she do so orally. Moreover, the residual functional capacity hypothetical identified by the ALJ allowed for Plaintiff to have some minimal interaction with co-workers. This job fits that hypothetical.With regard to the jobs of clerk-typist and surveillance system monitor, the Court finds that the residual functional capacity hypothetical identified by the ALJ allowed for Plaintiff's ability to hear conversational levels of speech when wearing hearing aids. Limited use of the telephone comports with the ALJ's hypothetical and Plaintiff's residual functional capacity.

hand packager which were also identified by the vocational expert as jobs Plaintiff could perform. Therefore, Plaintiff cannot establish prejudice and this claim fails.

The Court finds that the Commissioner's decision is supported by substantial evidence on the record as a whole and that the Commissioner applied the proper legal standard.  Accordingly, Plaintiff's appeal is without merit.

## VII.  CONCLUSION

The Magistrate Court **AFFIRMS** the final decision of the Commissioner.  The Court will enter judgment in a separate document.

SIGNED this 26th day of October, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE